UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

UNITED STATES OF AMERICA )
)
v. ) 4:14-cr- 12
)
) Judge Mattice/Lee
ROBERT ROY HATTAWAY )

SECOND SUPERSEDING INDICTMENT

COUNTS ONE THROUGH SIX
BANK FRAUD
(18 U.S.C. § 1344(1) & (2))

THE GRAND JURY CHARGES THAT:

A. AT ALL TIMES MATERIAL HEREIN:

The Homeland Community Bank (hereinafter "Homeland") was a financial institution whose accounts were insured by the Federal Deposit Insurance Corporation.

Homeland offered agricultural loans by which they would lend farmers money so farmers could purchase, plant, and harvest crops. In exchange, the farmers agreed to repay the loans from the proceeds obtained from selling the crops. The agreement provided that Homeland would have a lien, that is, a secured interest in the harvested crops. Homeland protected their secured interest by requiring purchasers of the borrower's crops to draft payments by check to both the borrower and to Homeland.

Kokomo Grain Company (hereinafter "Kokomo") was a business licensed in the state of Tennessee, located in Manchester, Tennessee. Kokomo's business included the purchase and sale of grain.

In 2005, Homeland loaned defendant, ROBERT ROY HATTAWAY, a $160,000 agricultural loan, guaranteed up to 90% by the United States Department of Agriculture, so that defendant could purchase, plant, and harvest crops. Defendant agreed to repay the loan on or before January 2006 with the proceeds from the harvested crops. Homeland protected its secured interest in defendant's crops by requiring purchasers of defendant's crops to draft payments by check to both defendant and Homeland.

In 2005, Kokomo agreed to purchase 50,000 bushels of corn and milo from defendant and Kokomo acknowledged that Homeland had a lien on the harvested crops. Kokomo further agreed to purchase grain from defendant with checks issued to both defendant and Homeland.

Throughout crop-year 2005, Kokomo issued a number of payments for grain purchased from defendant and in doing so, issued checks made payable to both defendant and to Homeland.

B. THE SCHEME TO DEFRAUD:

Beginning as early as January 2005 and continuing until in or about January 2006, the exact dates unknown to the Grand Jury, in the Eastern District of Tennessee, defendant, ROBERT ROY HATTAWAY, did knowingly devise and intend to devise a scheme and artifice to defraud Homeland and to obtain money and property owned by and under the custody and control of Homeland by means of false and fraudulent pretenses, representations and promises. The scheme and artifice to defraud and to obtain money so devised and intended to be devised by defendant was in substance as follows:

It was part of the scheme to defraud that defendant, ROBERT ROY HATTAWAY, would harvest and sell grain secured by an agricultural loan from Homeland and, for payment, would receive checks from Kokomo Grain issued to defendant and to Homeland.

It was further a part of the scheme to defraud that defendant, ROBERT ROY HATTAWAY, would either himself, or using others unknown to the Grand Jury, alter the checks issued by Kokomo by removing Homeland as a payee. The identity of the person who altered the check and the manner of altering the check is not known.

It was further a part of the scheme to defraud that defendant, ROBERT ROY HATTAWAY, would endorse and then negotiate the altered checks intending to convert the proceeds to his personal use and intending to conceal such transactions from Homeland and to prevent Homeland from acting to protect its interest in the funds and its secured interest in the crops.

C. THE EXECUTION:

The Grand Jury realleges and incorporates by reference Parts A and B of Counts 1 through 6 in this Indictment as if fully set forth herein.

On or about the dates set forth below in the Eastern District of Tennessee and elsewhere, defendant, ROBERT ROY HATTAWAY, for the purpose of executing the aforesaid scheme and artifice to defraud a financial institution, Homeland, and attempting to do so, and to obtain money, funds, assets and other property owned by, and under the custody and control of a financial institution, Homeland, by means of materially false and fraudulent pretenses, representations, and promises, did knowingly deposit and cash, and cause another to deposit and cash altered checks at Homeland, intending such fraudulent pretenses and representations to conceal that the checks represented proceeds from Homeland's security and to give the pretense that defendant was entitled to the entire proceeds within each check, such transactions being more fully described as follows:

3

| Count | On or about: | Check deposited: | |
|---|---|---|---|
| 1 | October 14, 2005 | 081759 from Kokomo Grains Deposited at Homeland | $1,980.53 |
| 2 | October 20, 2005 | 081799 from Kokomo Grains Deposited at Homeland | $12,725.12 |
| 3 | November 9, 2005 | 081884 from Kokomo Grains Deposited at Homeland | $4,654.30 |
| 4 | November 15, 2005 | 081921 from Kokomo Grains Deposited at Homeland | $11,554.40 |
| 5 | December 28, 2005 | 081977 from Kokomo Grains Deposited at Homeland | $25,571.75 |

| Count | On or about: | Check cashed: | |
|---|---|---|---|
| 6 | February 16, 2006 | 082058 from Kokomo Grains Negotiated at Hullet's Texaco | $506.52 |

All in violation of Title 18, United States Code, Sections 1344(1) & (2).

COUNTS SEVEN THROUGH TWENTY-FIVE
FALSE STATEMENTS FOR CROP INSURANCE
(18 U.S.C. §1014)

THE GRAND JURY FURTHER CHARGES THAT:

A. AT ALL TIMES MATERIAL TO THIS INDICTMENT:

B. The Federal Crop Insurance Program

The United States Department of Agriculture (hereinafter "USDA") was a department of the United States established to support agricultural production.

In 1938, Congress passed the Federal Crop Insurance Act (hereinafter referred to as the

4

"Act"), 7 U.S.C. § 1501 et seq., in order to promote the economic stability of agriculture in the United States through, in part, a system of crop insurance.

In furtherance of this purpose, Congress established the Federal Crop Insurance Corporation (hereinafter referred to as the "FCIC"), which was authorized to insure crop losses due to drought, flood, or other natural disaster, as determined by the Secretary of USDA.

The Act only authorized the extension of insurance coverage to producers, that is, a person or entity with an insurable interest in a crop as an owner-operator, landlord, tenant or sharecropper. Farmers are producers. A crop insurance policy under the Act provided payments to a farmer when bad weather, such as a freeze or drought, or other such unavoidable events, caused the harvest for the farm to be less than the amount specified in the insurance contract, or written policy agreement.

The Risk Management Agency, an agency of the USDA, contracted on behalf of the FCIC with insurance companies to reimburse insured farm losses. These insurance companies were known as Reinsurance Companies.

C. The Reinsurance Companies

CropUSA and Hudson Insurance Group were companies that were reinsured by FCIC. Each entered into a Standard Reinsurance Agreement ("SRA") with FCIC. Defendant applied for insurance from CropUSA and subsequently sought compensation for losses in 2008 from CropUSA. CropUSA was purchased and owned by the Hudson Insurance Group, another reinsurance agency.

Licensed sales agents with insurance companies entered into agreements with the reinsurance companies to sell and service crop insurance policies. These agents sold and serviced crop insurance policies to defendant, ROBERT ROY HATTAWAY.

D. The Determination of Losses and Indemnity Payment

When a natural disaster damaged crops, insurance compensated for the production differences between the current damaged crops and the estimated potential yield that would have been produced had the crops not been damaged. Potential yield was calculated by averaging prior years of production for a particular crop grown by a farmer on a specific farm designated by its unique Farm Serial Number (FSN). After the claims were submitted, insurance companies sometimes conducted audits known as Actual Production History reviews. When Actual Production History reviews were conducted, insurance companies relied upon the insured to present accurate documentation of prior and current production levels.

In 2009, defendant made a claim to Hudson Insurance for reimbursement for soybean losses in Crop-year 2008 and was paid in excess of $100,000. The loss amount was based in part on defendant's representations of production amounts he attained during Crop-year 2006. Because the reimbursement amount exceeded $100,000, Hudson Insurance conducted a routine audit of defendant. In so doing, Hudson Insurance requested production receipts for multiple years, including Crop-year 2006.

Instead of submitting accurate receipts for Crop-year 2006, defendant submitted receipts that were counterfeit and fabricated. In the cases involving the Smith Grain receipts, defendant submitted receipts that had been fabricated by taking 2002 receipts that showed 2002 production, removing the 2002 dates, and replacing them with dates from 2006. In the cases involving the Kokomo receipts, defendant submitted receipts that had been fabricated using a 2009 receipt from Kokomo.

6

E. The False Statements

The Grand Jury realleges and incorporates by reference Parts A through D of Counts 7 through 25 in this Indictment as if fully set forth herein.

On or about March 10, 2009, in the Eastern District of Tennessee, defendant ROBERT ROY HATTAWAY, knowingly made false statements and reports for the purpose of influencing the action of the Federal Crop Insurance Corporation in connection with an audit of an insurance payment for Crop-year 2008, that is false receipts from Crop-year 2006, knowing that such receipts were false, such false statements being further described below, each receipt constituting a separate charge:

| COUNT | COMPANY | FICTITIOUS DATE | FICTITIOUS SALES OF SOYBEANS |
|---|---|---|---|
| 7 | Smith Grain, Inc. | Sept. 13, 2006 | 659.50 bushels of soybeans, ticket number 5007 |
| 8 | Smith Grain, Inc. | Oct. 30, 2006 | 299.72 bushels of soybeans, ticket number 5064 |
| 9 | Smith Grain, Inc. | Nov. 5, 2006 | 795.80 bushels of soybeans, ticket number 5067 |
| 10 | Smith Grain, Inc. | Nov. 18, 2006 | 843.17 bushels of soybeans, ticket number 5319 |
| 11 | Smith Grain, Inc. | Nov. 18, 2006 | 651.33 bushels of soybeans, ticket number 5320 |
| 12 | Kokomo Grain Co. Inc. | Oct. 2, 2006 | 818.67 bushels of soybeans, ticket number 88078 |
| 13 | Kokomo Grain Co., Inc. | Oct. 2, 2006 | 818.67 bushels of soybeans-ticket number 87079 |
| 14 | Kokomo Grain Co., Inc. | Nov. 1, 2006 | 876.67 bushels of soybeans, ticket number 88059 |

| | | | |
|---|---|---|---|
| 15 | Kokomo Grain Co., Inc. | Nov. 2, 2006 | 864.83 bushels of soybeans, ticket number 88069 |
| 16 | Kokomo Grain Co., Inc. | Nov. 2, 2006 | 892.67 bushels of soybeans, ticket number 88079 |
| 17 | Kokomo Grain Co., Inc. | Nov. 3, 2006 | 887.83 bushels of soybeans, ticket number 88103 |
| 18 | Kokomo Grain Co., Inc. | Nov. 3, 2006 | 989.50 bushels of soybeans, ticket number 88104 |
| 19 | Kokomo Grain Co., Inc. | Nov. 9, 2006 | 901.17 bushels of soybeans, ticket number 88141 |
| 20 | Kokomo Grain Co., Inc. | Nov. 9, 2006 | 907.33 bushels of soybeans, ticket number 88133 |
| 21 | Kokomo Grain Co., Inc. | Nov. 10, 2006 | 871.67 bushels of soybeans, ticket number 88154 |
| 22 | Kokomo Gráin Co., Inc. | Nov. 10, 2006 | 1,005.17 bushels of soybeans, ticket number 88152 |
| 23 | Kokomo Grain Co., Inc. | Nov. 10, 2006 | 999.50 bushels of soybeans, ticket number 88147 |
| 24 | Kokomo Grain Co., Inc. | Nov. 10, 2006 | 841.50 bushels of soybeans, ticket number 88148 |
| 25 | Kokomo Grain Co., Inc. | Nov. 11, 2006 | 484.50 bushels of soybeans, ticket number 88158 |

All in violation of Title 18, United States Code, Section 1014.

## COUNT TWENTY-SIX
## MAIL FRAUD
## (18 U.S.C. § 1341)

THE GRAND JURY FURTHER CHARGES THAT:

A. AT ALL TIMES MATERIAL TO THIS INDICTMENT:

The United States Department of Agriculture (hereinafter "USDA") was a department of the United States, within the executive branch of the government, established to support agricultural production. The Farm Service Agency (hereinafter "FSA") was a federal agency within the USDA tasked with the implementation of federal laws and regulations concerning the conservation and regulation of farms, including providing disaster relief to farmers. The FSA was a successor agency to the Farmers Home Administration. The local, day-to-day operations of the FSA was administered by a committee called the County Executive Committee (hereinafter "COC.") The COC were three to five member committees, elected by local farmers, who made the day-to-day decisions on the application of federal farm benefit programs of the FSA, including the SURE program.

The Supplemental Revenue Assistance Payments (hereinafter "SURE") program authorized the Secretary of Agriculture to provide agricultural disaster assistance to producers who suffered qualifying crop production losses, crop quality losses, or both due to disaster, adverse weather, or other environmental conditions beginning with the 2008 crop year. SURE was one of the federal programs the FSA administered.

If a farmer's request for a federal farm benefit was denied directly by the FSA, the farmer could request the FSA to reconsider. The FSA conducted internal reconsiderations through

hearings before the COC. If the farmer's reconsideration request was denied by the COC, the farmer could appeal FSA's denial outside of the FSA, to the National Appeals Division (hereinafter "NAD.") The NAD oversaw an informal administrative hearing process, reviewed the denial of federal benefits, conducted hearings, and reported directly to the Secretary of the United States Department of Agriculture.

B. THE SCHEME TO DEFRAUD

Starting from in or about August 2008, and continuing until on or about June 24, 2010, in the Eastern District of Tennessee and elsewhere, the defendant, ROBERT ROY HATTAWAY, devised and intended to devise a scheme and an artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises.

C. THE PURPOSE OF THE SCHEME TO DEFRAUD

It was the purpose of the scheme to defraud that the defendant, ROBERT ROY HATTAWAY, would fraudulently apply for and attempt to receive federal benefits including benefits from the SURE program, in the name of his eight-year-old son, for damage done to another farmer's crops.

D. THE MANNER AND THE MEANS OF THE SCHEME TO DEFRAUD

1. It was part of the scheme to defraud that the defendant would obtain a crop insurance policy for two fields of wheat, known by their FSN numbers 1190 and 1534, that were leased and planted by other farmers.

2. It was further a part of the scheme to defraud that the defendant would obtain the insurance policy in the name of his 8-year-old son.

3. It was further a part of the scheme to defraud that the defendant would report a loss on the wheat fields to his insurance company.

4.  It was further a part of the scheme to defraud that the defendant would apply for federal assistance for damages done to the same wheat fields (1190 and 1534) in which he had no interest. It was part of the scheme to seek payments from the SURE program.

5.  It was further a part of the scheme to defraud that the defendant would apply for the federal benefits for fields 1190 and 1534 with the FSA office in Dekalb County, Tennessee, even though the fields were in Warren County, Tennessee.

6.  It was further a part of the scheme to defraud that the defendant would seek reconsideration from the FSA after being denied and would request a hearing with the COC.

7.  It was further a part of the scheme to defraud that the defendant would attend a hearing conducted by the COC, on behalf of the FSA, in Warren County, Tennessee, in which he presented a fake receipt purporting to show the purchase of wheat seeds from C+C Farms to support his request for reconsideration. It was also a part of the scheme that, in addition to the fake C+C receipt, the defendant would present a fake receipt from Darren Womack of Womack Seed Farms purporting to show that the defendant had paid to have wheat seed cleaned. It was also part of the scheme, that in addition to the fake C+C receipt and the fake Womack Seed Farms receipt, the defendant presented a check, drawn on a Region's Bank account, purporting to represent a payment to Womack Seed Farms for cleaning the wheat seed. In truth, as the defendant well knew, the check was never been presented to Womack Seed Farms and was never presented to Regions Bank for payment.

8.  It was further a part of the scheme to defraud that the defendant, upon being denied benefits from the FSA, appealed the denial to the NAD to reconsider the denial of federal benefits.

9. It was further a part of the scheme to defraud that the defendant, on or about December 3, 2009, mailed, or caused another to mail, the reconsideration record from the COC to the NAD using the United States Postal Service and, in support of his request for reconsideration, included the fake C+C receipt and the fake Womack Seed Farms seed cleaning receipt.

### E. THE EXECUTION OF THE SCHEME

The Grand Jury realleges and incorporates by reference Parts A through D of Count 26 in this Indictment as if fully set forth herein.

On or about December 3, 2009, within the Eastern District of Tennessee and elsewhere, the defendant, ROBERT ROY HATTAWAY, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and for obtaining money and property by materially false and fraudulent pretenses, representations, and promises, and to conceal said scheme, did knowingly cause to be delivered by the United States Postal Service, from the United States Post Office in Morrison, Tennessee, to the National Appeals Division in Cordova, Tennessee, mail matter, that is, the record for the appeal from the COC to the NAD including a fake C+C receipt and the fake Womack Seed Farms seed cleaning receipt.

All in violation of Title 18, United States Code, Section 1341.

12
Case 4:14-cr-00012-HSM-SKL Document 66 Filed 10/28/14 Page 12 of 16 PageID #: 417

## COUNT TWENTY-SEVEN
## FALSE STATEMENTS TO THE FARM SERVICE AGENCY
## (18 U.S.C. §1014)

THE GRAND JURY FURTHER CHARGES THAT:

The Grand Jury realleges and incorporates by reference Parts A through D of Count 26 in this Indictment as if fully set forth herein.

On or about September 17, 2009, in the Eastern District of Tennessee, defendant, ROBERT ROY HATTAWAY, did knowingly make and cause to be made, a false statement and report for the purpose of influencing the action of the Farm Services Agency, a successor agency of the Farmers Home Administration, in connection with the defendant's request for federal farm benefits, that is, defendant knowingly presented a false receipt to the Farm Services Agency purporting to show the defendant had purchased wheat seed from C+C Farms in Scottsville, Kentucky. Specifically, the receipt states that on October 26, 2008, the defendant purchased 1550 bushels of wheat seed for $10,075 from C+C Farms of Scottsville, Kentucky, when in fact, as the defendant well knew, the defendant did not purchase wheat seed from C+C Farms on October 26, 2008.

All in violation of Title 18, United States Code, Section 1014.

## COUNT TWENTY-EIGHT
## FALSE STATEMENTS TO THE FARM SERVICE AGENCY
## (18 U.S.C. §1014)

THE GRAND JURY FURTHER CHARGES THAT:

The Grand Jury realleges and incorporates by reference Parts A through D of Count 26 in this Indictment as if fully set forth herein.

On or about September 17, 2009, in the Eastern District of Tennessee, defendant ROBERT ROY HATTAWAY, did knowingly make and cause to be made a false statement and report for the purpose of influencing the action of the Farm Services Agency, a successor agency of the Farmers Home Administration, in connection with the defendant's request for federal farm benefits, that is, defendant knowingly presented, and caused another to present, a false receipt to the Farm Services Agency purporting to show the defendant paid to have wheat seeds cleaned. Specifically, the receipt states that on October 28, 2008, the defendant paid $1937.50 to Womack Seed Farms to have 1,550 bushels of wheat cleaned and that he paid with check number 1782, when in fact, as the defendant well knew, the defendant did not pay Womack Seed Farms to clean 1,550 bushels of wheat on October 28, 2008.

In violation of Title 18, United States Code, Section 1014.

## COUNT TWENTY-NINE
## USE OF A FALSE DOCUMENT
## (18 U.S.C. §1001)

THE GRAND JURY FURTHER ALLEGES THAT:

The Grand Jury realleges and incorporates by reference Parts A through D of Count 26 in this Indictment as if fully set forth herein.

On or about December 3, 2009, in the Eastern District of Tennessee and elsewhere, defendant ROBERT ROY HATTAWAY, willfully and knowingly made and used and caused another to make and use, in a matter within the jurisdiction of a department or agency of the United States, a false writing and document, knowing the same to contain materially false, fictitious, and fraudulent statements and entries. Specifically, the defendant submitted and caused another to submit to the National Appeals Division, an agency of the United States Department of Agriculture that was evaluating whether the defendant was entitled to federal benefits for damages done to crops, a fake receipt from C+C Farms, falsely stating within the receipt that on October 26, 2008, the defendant purchased 1550 bushels of wheat seed for $10,075, from C+C Farms of Scottsville, Kentucky when in fact, as the defendant well knew, the defendant purchased no wheat seed from C+C Farms on October 26, 2008.

In violation of Title 18, United States Code, Section 1001(a)(3).

## COUNT THIRTY
## USE OF A FALSE DOCUMENT
## (18 U.S.C. §1001)

THE GRAND JURY FURTHER ALLEGES THAT:

The Grand Jury realleges and incorporates by reference Parts A through D of Count 26 in

this Indictment as if fully set forth herein.

On or about December 3, 2009, in the Eastern District of Tennessee and elsewhere, defendant ROBERT ROY HATTAWAY, willfully and knowingly made and used and caused another to make and use, in a matter within the jurisdiction of a department or agency of the United States, a false writing and document, knowing the same to contain materially false, fictitious, and fraudulent statements and entries. Specifically, the defendant submitted and caused another to submit to the National Appeals Division, an agency of the United States Department of Agriculture evaluating whether the defendant was entitled to federal benefits for damages done to crops, a fake receipt from Womack Seed Farms, falsely stating within the receipt that the defendant had paid to clean 1,550 wheat seeds on October 28, 2008, when in fact, as the defendant knew, the defendant did not pay Womack Seed Farms to clean wheat seeds on October 28, 2008.

All in violation of Title 18, United States Code, Section 1001(a)(3).

TRUE BILL:

_____
GRAND JURY FOREPERSON

WILLIAM C. KILLIAN
UNITED STATES ATTORNEY

By: _____
James T. Brooks
Assistant U.S. Attorney

16

Case 4:14-cr-00012-HSM-SKL   Document 66   Filed 10/28/14   Page 16 of 16   PageID #: 421